**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**WILLIAMS JAMES MCKNIGHT,**

    Plaintiff,

v.                                      Case No. 6:08-cv-345-Orl-35GJK

**OFFICER CLIFTON, et al.,**

    Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case is before the Court on the Motion for Summary Judgment (Doc. No. 59) filed by Defendants Sheila Gallagher, Larry Clifton, and Tikela Waits and the Motion for Summary Judgment (Doc. No. 60) filed by Rashawn McCloud. In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), Plaintiff was notified by Order of the Court of his right to respond to Defendants' motions for summary judgment and to file affidavits and other documents in opposition to the motions (Doc. Nos. 77), but he did not do so. However, Defendants have offered into evidence deposition testimony and other evidence which the Court must consider and construe in the light most favorable to the Plaintiff.

*Factual Background*

Plaintiff, a *pro se* prisoner in the State of Florida, filed a complaint (Doc. No. 1) pursuant to 42 U.S.C. § 1983, alleging that, on February 14, 2007,[1] while incarcerated at the Orange County Jail (the "Jail"), he informed Correctional Officer McCloud ("Defendant

---

[1] The record reveals that the actual date was January 29, 2007.

McCloud"), that he was suffering an adverse reaction to certain medication he had taken. (Plaintiff's Complaint at 9-10.) Plaintiff had been prescribed antibiotics while incarcerated at another jail because of a syphillis outbreak, and he was given antibiotics within two or three weeks of his arrival at the Jail. (Deposition of Plaintiff at 76-77.) After taking the antibiotics at the Jail, he began experiencing side effects in the form of a rash and small sores. *Id*. at 76. Plaintiff informed Defendant McCloud of the adverse reaction between 8:00 p.m. and 9:00 p.m. *Id*. at 101.

Defendant McCloud contacted Sheila Gallagher ("Defendant Gallagher"), a nurse at the Jail, and Plaintiff explained his condition to her. (Plaintiff Complaint at 10.) She advised him to "put in a sick call." (Deposition of Plaintiff at 82.) About an hour later, Plaintiff called home and advised his mother and sister of the adverse reaction he was experiencing. *Id*. Plaintiff's family subsequently called 911, and an ambulance was dispatched to the Jail to treat Plaintiff. *Id*. at 83. Upon learning that the emergency unit was in route to the Jail, an official at the Jail advised the emergency unit that the medical staff at the Jail would care for Plaintiff "in-house," and the Jail official cancelled the call. (Affidavit of Tikela Waits at 2.)

At approximately 10:00 p.m., Correctional Officer Larry Clifton ("Defendant Clifton") escorted Plaintiff from his housing pod to a medical unit where he was seen and treated by a nurse. (Deposition of Plaintiff at 83-84.) Defendant Clifton then took Plaintiff into a closet or dark room where he proceeded to beat Plaintiff. *Id*. at 84. Defendant Clifton "maliciously and sadistically" kicked Plaintiff with his boots and struck Plaintiff with an object, which left "severe" cuts and scarring on his legs that looked "like bullet holes." *Id.*

at 44-45, 84-85; Plaintiff's Complaint at 10-11. Plaintiff was yelling and screaming for help during the assault, and Defendant Clifton told him to "keep quiet" and that he was providing Plaintiff with "medical treatment." (Plaintiff Complaint at 11.) In his deposition, Plaintiff stated that, after the assault, "I think I was bleeding from my nose and lip at the time." (Plaintiff's Deposition at 90.) Plaintiff states that Correctional Officer Tikela Waits ("Defendant Waits"), Defendant Gallagher, and another correctional officer were within the vicinity and refused to intervene during the assault. *Id.* at 89-90. Plaintiff did not seek any medical treatment as a result of the assault. *Id.* at 88-89.

Defendant Clifton then took Plaintiff out of the room and escorted him to another room, where he was left handcuffed for over four hours. (Plaintiff's Complaint at 11.) Eventually, another correctional officer took Plaintiff back to his cell. *Id*. Plaintiff alleges a violation of his Eighth Amendment right as a result of the use of excessive force and a violation of his Fourteenth Amendment rights as a result of the denial of medical care and the officers' refusal to assist Plaintiff during the assault.

## II.     Legal Standards

### A.     *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. V. Catrett* 477 U.S. 317, 323 (1986). Rule 56(e) further provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth facts showing there is a genuine issue of fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

### B. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009) (citation omitted) (quotation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted).

4

The Court is obliged to grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers; and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See id.* "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

### III.     Analysis

### A.     *The Excessive Force Claim*

As noted above, Plaintiff alleges that he was assaulted by Defendant Clifton and that other correctional officers were in the vicinity but refused to assist him. Defendant Clifton has presented evidence refuting Plaintiff's claim. For example, each of the Correctional Officers in the vicinity of Plaintiff on the evening of the alleged incident executed sworn affidavits stating they observed no evidence of Plaintiff having been physically beaten. *See* Affidavit of Nurse Gallagher at 2; Affidavit of Officer Clifton at 2-3; Affidavit of Officer McCloud at 2; Affidavit of Officer Waits at 3; Affidavit of Officer Doris Anderson at 2-3; Affidavit of Officer Leslie Rodriguez-Santiago at 2-3; Affidavit of Officer Simra Smith at 2-3; Affidavit of Robert Tompkins at 2. Defendant Clifton also denied assaulting Plaintiff. (Affidavit of Officer Clifton at 3.)

There was also evidence that, if any of those correctional officers had observed the incident described by Plaintiff, they would have documented it in the computerized Inmate

Management System (the "IMS")[2] and sent Plaintiff to receive medical treatment. *See generally*, Affidavits of Gallagher, Clifton, McCloud, Waits, Anderson, Rodriguez-Santiago, Smith, and Tompkins. However, there was no record of any such documentation ever being created. *See* Affidavit of Cynthia Corrado at 1-2[3]; Affidavit of Lourdes Markham at 1-2.[4]

Additionally, the medical records from the Jail reflect that Plaintiff was seen on January 29, 2007, and treated for a mild allergic reaction, *see* Affidavit of Lourdes Markham at 3, and, at that time, Plaintiff did not exhibit any signs of having been physically assaulted. *Id*. Plaintiff was seen at the Jail's medical facility on the day after the incident (on the morning of January 30, 2007), and there was no notation or other evidence that Plaintiff had been the victim of a physical assault. *Id*. In fact, there was no record of Plaintiff ever being seen by any medical care provider at the Jail "at any time during his incarceration with complaints or evidence of being the victim of a physical assault." *Id*.

Further, telephone calls made from the Jail are recorded with the knowledge of the inmates and the parties being called. *See* Affidavit of Officer Corrado at 4. Plaintiff made 35 telephone calls lasting over seven hours from the Jail in the six days after the incident described in the complaint. *Id*. Officer Corrado reviewed those calls, and "at no point

---

[2] The Orange County Corrections Department uses a computerized system to create and maintain confidential healthcare records of inmates. (Affidavit of Marlene Surowitz at 1-2.).

[3] Ms. Corrado stated in her affidavit that there were no reports in the IMS indicating any use of force on Plaintiff on or around January 29, 2007, or at any other time during his incarceration.

[4] Ms. Markham is employed as the Clinical Risk Manager at the Orange County Corrections Department Health Services Division.

during any of those telephone calls did Plaintiff ever state he had been the victim of a physical assault." *Id*.

Plaintiff stated in his deposition that Defendant Clifton took him into a closet or "side room," closed the door, and began to "physically beat" him. (Plaintiff's Deposition at 84.) Plaintiff also described being beaten by Defendant Clifton with a "blunt object" that caused a scar on his leg and being struck with Defendant Clifton's fist and kicked with his boots. *Id*. He testified further that Defendant Gallagher and Defendant Waits were aware of the incident as it was occurring but did not assist him. *Id*.

The constitutional right involved in this case concerns whether Plaintiff was a victim of excessive use of force, which is a violation of the Eighth Amendment. To establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a *de minimis* injury resulted. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id*. at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind," and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id*. at 5.

In the present case, Plaintiff alleges that he was assaulted by Defendant Clifton, and

7

his description of the events in his deposition, which was filed by the Defendants, demonstrates a malicious and sadistic purpose to inflict harm. Taking Plaintiff's statement of the events as true, Plaintiff was taken into a closet or side room, where he was punched, kicked, and struck with a blunt object, which left scarring on his leg. He stated that Defendant Gallagher and Defendant Waits were aware of the assault but did not intervene. Thus, Defendant Gallagher and Defendant Waits face potential liability under section 1983 for failing to take reasonable steps to protect Plaintiff from Defendant Clifton's use of excessive force. *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3rd Cir. 2002) (holding that a "corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."). In addition, *Defendants* have proffered evidence on this record of Plaintiff's testimony establishing that Plaintiff's injuries were more than *de minimis*. In his deposition, he specifically describes the scarring on his legs as looking like "bullet holes." *See Evans v. Alameida,* 2006 WL 618298, at *11 (E.D. Cal. March 10, 2006) (finding that injuries consisting of a scrape that took a month to heal and left a scar could not be determined to be *de minimis* as a matter of law on summary judgment).

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude from evidence admitted by Defendants that 1) Defendant Clifton used excessive force in violation of Plaintiff's Eight Amendment rights, and 2) Defendants Gallagher and Waits could have intervened to stop the assault.

Defendants also assert a defense of qualified immunity. In the qualified immunity

8

context, the Court must resolve all issues of material fact in Plaintiff's favor and then answer the legal question of whether Defendants are entitled to qualified immunity under that version of the facts. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)(citing *West v. Tillman*, 496 F.3d 1321, 1326 (11th Cir. 2007)). Here, the record, viewed in the light most favorable to Plaintiff, establishes a violation of his Eighth Amendment rights. Plaintiff was taken into a closet or side room by Defendant Clifton, where he was punched, kicked, and struck with a blunt object, which left scarring on his leg. The beating, as alleged, was brutal and unprovoked. Defendant Gallagher and Defendant Waits also violated his Eighth Amendment rights as they had a reasonable opportunity to intervene and refused to do so.

Moreover, under the facts alleged, Plaintiff's Eighth Amendment rights were clearly established in that it would have been clear to a reasonable officer that his or her conduct was unreasonable. Viewing the record in the light most favorable to Plaintiff, an objectively reasonable officer in Defendant Clifton's position could not have believed that he was entitled to brutally beat Plaintiff for no apparent reason. The beating was unprovoked and without any justification. Likewise, objectively reasonable officers in the position of Defendants Gallagher and Waits could not have believed that it was unnecessary to intervene during this brutal attack. Thus, Defendants Clifton, Gallagher, and Waits are not entitled to summary judgment, on qualified immunity grounds, regarding Plaintiff's claim predicated on the Eighth Amendment.

However, Defendants "are not foreclosed from asserting a qualified immunity defense at trial." *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) (citations omitted). Should the jury choose to reject Plaintiff's version of the facts, or the facts not be presented

at trial as alleged on summary judgment, the qualified immunity analysis will inevitably change. In this regard, Defendants may seek special interrogatories to the jury to resolve factual disputes going to the qualified immunity defense. *Id*.

## B. *The Deliberate Indifference Claim*

Plaintiff alleges that Defendants willingly and knowingly neglected and denied him medical care with regard to his allergic reaction to the antibiotics.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," and it has been interpreted as obligating prison officials to provide medical care to inmates in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). "Prison personnel may not subject inmates to acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs . . . . [S]uch deliberate indifference by a correctional system to the serious medical needs of its prisoners constitutes the kind of unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment." *Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991) (quotations omitted) (citations omitted).

In his deposition, Plaintiff admitted that the only medication required to treat his alleged allergic reaction was a single dose of Benadryl. (Deposition of Plaintiff at 121.) Plaintiff was provided that medication when he was treated by an unknown nurse just prior to his alleged assault. *Id*. Plaintiff also admits he never had any chest pains after the date of this alleged incident. *Id.* at 122. When asked if he had a serious medical condition on the date of the incident, Plaintiff responded that he merely had an "allergic reaction." *Id*. The record is devoid of any evidence that Plaintiff's medical condition was diagnosed by

10

a physician as a condition mandating treatment. Plaintiff admitted that he was never seen by any medical professional for the condition at issue. *Id*. at 89.

Thus, the evidence in this case fails to reveal that Plaintiff suffered from any serious medical problems or physical limitations during the period in question. In light of this undisputed evidence, there is no basis for Plaintiff's claims against Defendants for failure to provide medical care. Plaintiff has presented no evidence that Defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Not only has Plaintiff failed to show that he suffered from any serious medical condition, but he has also not shown that Defendants had a culpable state of mind or that they intended wantonly to inflict pain or suffering on him. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Even assuming *arguendo* that Defendants were in some manner negligent with regard to Plaintiff's medical treatment, medical malpractice does not constitute a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106.

## IV.   Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Clifton, Defendant Gallagher, and Defendant Waits shall be granted in part and denied in part, consistent with this Order. The motion for summary judgment filed by Defendant McCloud is granted.[5] The only claim remaining for trial, therefore, is the claim of excessive

---

[5]Plaintiff's only allegations pertaining to Defendant McCloud were vaguely related to his deliberate indifference claim. The Court finds that Plaintiff's allegations as to Defendant McCloud are too vague and conclusory to state a cause of action under section 1983 against Defendant McCloud and that, in light of the granting of summary judgment as to the deliberate indifference claim, Defendant McCloud is entitled to summary judgment.

force arising under the Eighth Amendment.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion for Summary Judgment filed by Defendants Clifton, Gallagher, and Waits (Doc. No. 59, filed April 27, 2009) is **GRANTED** in part and **DENIED** in part.

2. The Motion for Summary Judgment filed by Defendant McCloud (Doc. No. 60, filed April 27, 2009) is **GRANTED.**

3. The Clerk of the Court is directed to enter a judgment in favor of Defendant McCloud and against Plaintiff.

**DONE AND ORDERED** in Orlando, Florida, this 17th day of February 2010.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 1/8
Counsel of Record
William James McKnight

12